UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
Civil Action No. 5:23-cv-161

| | |
|---|---|
| MISTY PETERSON & ALEXIS PETERSON,<br><br>    Plaintiffs,<br>        v.<br><br>DARRIN HOYLE d/b/a HOYLE AUTO SALES & DARRIN HOYLE, individually,<br><br>    Defendants. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

---

## I. INTRODUCTION

1. North Carolina employees shouldn't be helpless to refuse their bosses' sexual advances. Fortunately, North Carolina state and federal courts recognize that an employer's decision to fire an employee for refusing sexual advances violates the State's public policy. Misty Peterson and her daughter Alexis Peterson were fired in violation of this public policy. Misty began working for Hoyle Auto Sales in Taylorsville, North Carolina on or about May 5, 2021. In early 2023, the Company hired Alexis to help with office management and washing cars.

2. Not long after Alexis started working for the Company, Sales Manager Dustin Houston subjected her to regular sexual harassment and advances. Houston was Misty's and Alexis's boss. At one point, Houston even offered to pay Misty if she would arrange for him

1

to have a romantic encounter with her daughter. Houston also subjected Misty to sexual harassment and advances on a regular basis.

3. Misty complained to Hoyle Auto Sales' owner, Darrin Hoyle, about the sexual propositions she and her daughter had experience. Hoyle made clear he wasn't going to help. When Misty said she was going to speak with a lawyer regarding the sexual harassment and advances, Hoyle Auto Sales fired both Alexis and Misty.

4. Misty and Alexis have suffered deeply because of this illegal termination. Misty and Alexis bring this action against Defendants for wrongful discharge in violation of public policy.

## II. PARTIES, JURISDICTION, AND VENUE

5. Plaintiffs are residents of Alexander County, North Carolina.

6. Darrin Hoyle is a resident of Seminole, Florida. He is resides at 13748 74th Ave., Seminole, FL 33776-3801.

7. Defendant Darrin Hoyle d/b/a Hoyle Auto Sales has a principle place of business in Florida, and also a place of business in Alexander County, North Carolina.

8. Darrin Hoyle runs his business, known as "Hoyle Auto Sales" without any corporate entity. That is, Darrin Hoyle paid Plaintiffs directly from his personal accounts and provided tax documentation to his employees using his own social security number as the payor. As far as Plaintiffs can tell, there is no Hoyle Auto Sales or related entity registered with the State of North Carolina or Florida. However, the location where Plaintiffs worked held itself out as "Hoyle Auto Sales."

9. Plaintiffs worked for Defendants in their Taylorsville, North Carolina location in

Alexander County.

10. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds the value of $75,000, exclusive of interest and costs, and is between citizens of different States.

11. Venue is proper in the Western District of North Carolina because: (a) Defendants' unlawful activities were committed in the Western District of North Carolina—including in Taylorsville, North Carolina; (b) Plaintiffs worked in the Western District of North Carolina for Defendants; (c) Defendants reside in the Western District of North Carolina because they are subject to the Court's personal jurisdiction here in light of their presence in the Western District of North Carolina; and (d) a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in the Western District of North Carolina.

### III. FACTUAL STATEMENT

12. On or around May 5, 2021, Defendants hired Misty Peterson as a full-time Office Manager at Hoyle Auto Sales.

13. In or around January 2023, Defendants hired Misty's daughter, Alexis Peterson, to help with office management and washing cars.

14. On or around February 7, 2023, Defendants' Sales Manager Dustin Houston told Misty he would pay her for a date with her daughter Alexis, who was 20-years-old at the time.

15. Misty forcefully refused Houston's proposal and was understandably quite upset. Houston responded that he thought Alexis was gorgeous. Houston—around the same age as Misty—asked Misty why she would be upset about him wanting to date her daughter.

16. After receiving this refusal of his sexual advance, Houston began propositioning Alexis directly. Houston texted Alexis, asking on multiple occasions for Alexis to come to the beach with him for the weekend. Alexis declined his advances.

17. On or around April 4, 2023, Houston texted Alexis, "Any chance u wanna ride over and watch a movie and talk? I'd love to get to know u."

18. When Alexis responded that she couldn't because she was painting a friend's salon, Houston responded, "You paint too? Let me find out what all u can do."

19. Alexis did not respond to this sexually charged text message.

20. In another instance, Houston texted Alexis about wanting her to come over. Houston said, "Just come to my house. You can stay there too. You can have your own room and everything." Alexis replied, "No I've already told u I'm not staying at ur house. Why would I want to do that"?

21. Nevertheless, Houston persisted. On or around April 7, 2023, Houston texted Misty, asking to be put in an Airbnb room with Alexis and her friend, Ashton, for their birthday trip to Myrtle Beach.

22. Misty once again refused. She let Houston know that if he was going to be a creep she and Alexis would need to get another room somewhere else away from him.

23. Houston continued harassing Alexis. On or around April 11, 2023, Houston asked Alexis out over text—"Would u ever date an older guy ?" Alexis replied "No."

24. Later that night, Houston texted Alexis again, telling her to just let him be her sugar daddy.

25. Houston also called Alexis a "bad ass hot chick" despite her countless rejections of his inappropriate sexual advances.

26. Getting nowhere with daughter Alexis, Houston set his sights on her mother. On or around April 13, 2023, Houston texted Misty, asking that she come over to his house and have sex with him. Misty refused, and reminded Houston that she has a boyfriend.

27. Houston's harassment was not limited to text messages. Between March 2023 and May 2023, he made sexual comments about Misty and Alexis at work. This was especially true when Houston's friends visited the car lot.

28. On or around May, 22, 2023, Misty was driving by the car lot when she saw Houston crossing the street. Misty honked her car horn to say hello, and let him know via text that she was going to be coming by the lot to get her check from the cars she sold the week before.

29. Houston responded to Misty's text, "horn blows, does the driver?"

30. This "horns blow, does the drover?" comment was a fellatio reference.

31. Once again, Misty let Houston know she had a boyfriend and rejected his proposition for oral sex.

32. Regardless of how many times Misty and Alexis asked Houston to stop making sexual comments and propositions, he would not stop. When Misty got her check later that day, Misty said she was going to get an attorney because of Houston's sexual advances and propositions of her and her daughter.

33. The very next day, on or around May 23, 2023, Misty came into work to find another woman there before Houston arrived. When Misty asked how she could help this woman, she

5

responded she was Houston's friend. When Houston arrived for work, Houston and the other woman went outside to talk.

34. Misty had a feeling something was up. She was right.

35. On or around May 25, 2023, Houston asked Misty if she had found another job yet. Misty was confused. She had never mentioned wanting another job. Houston then said Hoyle had found someone else to take her job to work part time.

36. After receiving this text, Misty called Houston. Houston said Hoyle wanted Misty to work part time. Misty then told Houston she was going to call Hoyle. Houston began to panic. He told Misty, "No, I will call him first." Misty asked why, and Houston admitted he wanted to hire one of his "ex" employees to replace Misty because Misty threatened to contact an attorney regarding the sexual propositions.

37. Later that day, Misty called Hoyle to speak with him about Houston's sexual behavior. Hoyle said he was leaving everything up to Houston.

38. Two days later, on or around May 27, 2023, Misty texted Hoyle and asked whether or not she still had a job. She sent Hoyle screenshots of Houston's sexual harassment and propositions.

39. Misty also informed Hoyle that Houston had been showing her sons nude photographs of a 20-year-old friend.

40. Hoyle fully ratified Houston's termination decision.

41. Houston then confirmed over text that he could not have Misty or Alexis working there anymore because Misty threatened to talk to an attorney about the sexual harassment and propositions.

42. Defendants illegally fired Misty and Alexis in violation of North Carolina public policy in retaliation for their refusals of Houston's sexual harassment and advances.

## IV. LEGAL CLAIMS

### Count I
*(Wrongful Discharge in Violation of Public Policy)*

43. The allegations contained in the foregoing paragraphs are incorporated by reference herein.

44. Plaintiffs were at-will employees of Defendant Darrin Hoyle d/b/a Hoyle Auto Sales.

45. Plaintiffs were at-will employees of Defendant Darrin Hoyle.

46. The public policy of the State of North Carolina prohibits an employer from terminating an employee for refusing to accede to sexual advances.

47. The public policy of North Carolina, codified in the North Carolina Equal Employment Practices Act, N.C. Gen. Stat. § 143-422.2(a), seeks to protect and safeguard the opportunity and right of all individuals to "seek, obtain, and hold employment without discrimination" on the basis of sex. The public policy of North Carolina also prohibits prostitution or any similar requirement to engage in sexual activity as a part of one's employment. *See* NCGS 14-205.1.

48. Plaintiff Misty Peterson refused a supervisor's sexual advances.

49. Plaintiff Alexis Peterson refused a supervisor's sexual advances.

50. Plaintiff Misty Peterson threatened to consult with a lawyer regarding the supervisor's sexual advances towards her and Alexis Peterson.

51. Defendants then terminated Plaintiffs in violation of the above North Carolina public policies.

52. As an actual, proximate, and foreseeable result of Defendant's actions, Plaintiffs have suffered lost back and front pay, diminution in their earning capacity, severe emotional distress, damage to their reputation, anxiety, depression, embarrassment, humiliation, and their peace of mind has been disturbed.

53. Defendant's actions were done maliciously, willfully, wantonly, and in a manner that demonstrates a reckless disregard for Plaintiffs' rights. Defendant's officers, directors, and managers participated in and condoned this malicious, willful, wanton, and reckless conduct alleged above. As a result of Defendant's conduct, Plaintiffs are entitled to recover punitive damages.

## **JURY TRIAL DEMANDED**

WHEREFORE, the Plaintiff prays the Court to:

54. Enter a judgment against Defendant and order Defendant to pay Plaintiff compensatory damages in an amount to be determined at trial;

55. Award Plaintiff punitive damages pursuant to N.C. GEN. STAT. § 1D-1 *et seq.*;

56. Award Plaintiff all reasonable costs and attorney's fees incurred in connection with this action;

57. Award Plaintiff such other and further equitable relief as the Court deems appropriate under the circumstances; and

58. Grant Plaintiff a trial of this matter by a jury.

This the 9th of October, 2023.

*/s/ Sean F. Herrmann*
Sean F. Herrmann
North Carolina Bar No. 44453
Kevin P. Murphy
North Carolina Bar No. 41467
Herrmann & Murphy, PLLC
400 Clarice Avenue, Suite 100
Charlotte, North Carolina 28204
Phone: 704-940-6399
Fax: 704-940-6407
Email: kevin@herrmannmurphy.com
Email: sean@herrmannmurphy.com

*Attorneys for Plaintiff*